24782. EVANS et al. v. ABNEY, Trustee, et al.

ARGUED SEPTEMBER 9, 1968—DECIDED DECEMBER 5, 1968.

*William H. Alexander, Jack Greenberg, James M. Narbitt, III,* for appellants.

*Jones, Cork, Miller & Benton, Charles M. Cork, Frank C. Jones, Timothy K. Adams, Trammell F. Shi, George C. Grant, Arthur K. Bolton, Attorney General,* for appellees.

MOBLEY, Justice. This appeal is from an order of Bibb Superior Court which held that a trust created by Senator A. O. Bacon in his will dated March 28, 1911, providing for a park in the City of Macon, to be called Baconsfield, for the benefit of "white women, white girls, white boys and white children of the City of Macon," had failed and the property would revert by operation of law to the heirs at law of Senator Bacon.

The litigation was commenced in May, 1963, when Charles E. Newton and others, as members of the Board of Managers of Baconsfield, brought a petition against the City of Macon, as trustee under the will of Senator Bacon, and Guyton G. Abney and others, as successor trustees under the will, holding assets for the benefit of residuary beneficiaries, asserting that the City of Macon was failing and refusing to enforce the provisions of the will with respect to the exclusive use of Baconsfield, and praying that the city be removed as a trustee. Reverend E. S. Evans and others, Negro residents of the City of Macon, on behalf of themselves and other Negroes similarly situated, filed an intervention, contending that the restriction in the trust limiting the use of the park to white women and children was illegal, and praying that the general charitable purpose of the testator be effectuated by refusing to appoint private persons as trustees. The heirs at law of Senator Bacon also intervened, praying that, if the relief sought by the original petitioners not be granted, the property revert to the heirs. The City of Macon in its answer alleged that it could not legally enforce segregation. The city later amended its answer, alleging that it had by resolution resigned as trustee under the will, and praying that its resignation be accepted by the court. The superior court accepted this resignation by the City of Macon and appointed new trustees. On appeal by the Negro intervenors from this judgment, this court affirmed the judgment of the trial court. For a full statement of the pleadings see *Evans v. Newton,* 220 Ga. 280 (138 SE2d 573).

The Supreme Court of the United States granted writ of certiorari and reversed the judgment of this court, holding in part: "Under the circumstances of this case, we cannot but conclude that the public character of this park requires that it be treated as a public institution subject to the command of the Fourteenth Amendment, regardless of who now has title under state law. We may fairly assume that had the Georgia courts been of the view that even in private hands the park may not be operated for the public on a segregated basis, the resignation would not have been approved and private trustees appointed. We put the matter that way because on this record we cannot say that the transfer of title per se disentangled the park from segregation under the municipal regime that long controlled it." Evans v. Newton, 382 U. S. 296, 302 (86 SC 486, 15 LE2d 373).

The judgment of the Supreme Court of the United States was made the judgment of this court. The opinion of this court remanding the case to the trial court was in part as follows: "When this case was before us for review, we sustained the orders of the trial court accepting the resignation of the City of Macon as trustee of Baconsfield and appointing new trustees. The Supreme Court of the United States, in the general reversal of the judgment of this court, did not, in the majority opinion, make any specific ruling on the right of the City of Macon to resign as trustee or that new trustees could not be appointed. The resignation of the City of Macon as trustee of Baconsfield because of its inability to carry out the provisions of the trust being an accomplished fact (and we know of no law that could compel it to act as trustee) and the order of the court appointing new trustees having been reversed, the trust property is without a trustee. Even if new trustees were appointed, they would be compelled to operate and maintain the park as to Whites and Negroes on a non-discriminatory basis which would be contrary to and in violation of the specific purpose of the trust property as provided in the will of Senator Bacon. Under these circumstances, we are of the opinion that the sole purpose for which the trust was created has become impossible of accomplishment and has been terminated. (See Restatement (Second), Trusts § 335. 'Where a trust is expressly created  . . .  [and]

fail[s] from any cause, a resulting trust is implied for the benefit of the grantor, or testator, or his heirs.' *Code* § 108-106 (4))." *Evans v. Newton*, 221 Ga. 870 (148 SE2d 329).

On remand of the case to the Superior Court of Bibb County, a motion for summary judgment was filed by Guyton G. Abney and others, as successor trustees under the will of Senator Bacon. After consideration of depositions and affidavits, the Superior Court of Bibb County entered a summary judgment decreeing as follows: The relief prayed by Reverend E. S. Evans and other Negro intervenors is denied. Under the decision of the United States Supreme Court the essential purpose of the trust creating Baconsfield in Senator Bacon's will has become impossible of performance, and the trust has failed and is terminated. The doctrine of cy pres is not applicable to the trust creating Baconsfield. There is no general charitable purpose expressed in the will. It is clear that the testator sought to benefit a certain group of people, white women and children of Macon, and the language of the will clearly indicates that the limitation to this class of persons was an essential and indispensable part of the testator's plan for Baconsfield. There has been no dedication of Baconfield as a park for the use of the general public. There is nothing in the record to support the contention that the Bacon heirs are estopped from claiming a reversion to them. The property has reverted by operation of law to these heirs. In view of the termination of the trust, it is not necessary that there be a trustee. The City of Macon, having no further trust duties to perform or trust assets to account for, is dismissed as a party to the case. Certain acts and doings of the de facto successor trustees are ratified and approved. Receivers are appointed. The title to the assets of the trust property is decreed to be in the heirs at law of Senator Bacon.

The Negro intervenors appealed from this judgment, enumerating as error each of the findings of the trial court, and the failure to find that Baconsfield should be operated as a public park on a non-discriminatory basis. The intervenors contend that they have been denied due process of law and equal protection of the laws under the Constitution of the United States by the rulings made, and that the judgment does not follow the mandate of the Supreme Court of the United States.

1. The intervenors urge that the doctrine of cy pres should be applied to Senator Bacon's will, and that the nearest effectuation of the intention of Senator Bacon would be to operate the park for the benefit of all citizens of the City of Macon. The doctrine of cy press is expressed by *Code* § 108-202 as follows: "When a valid charitable bequest is incapable for some reason of execution in the exact manner provided by the testator, donor, or founder, a court of equity will carry it into effect in such a way as will as nearly as possible effectuate his intention."

Senator Bacon in the provision of his will creating Baconsfield was specific in listing the persons for whose benefit the trust was created, the beneficiaries being "the white women, white girls, white boys and white children of the City of Macon." He empowered the board of managers to exercise their discretion in also admitting "white men of the City of Macon, and white persons of other communities." He left no doubt as to his wish that the park be operated on a segregated basis. After expressing his kind feelings toward persons of the Negro race, he stated his reasons for limiting the beneficiaries of the trust to white persons as follows: "I am, however, without hesitation in the opinion that in their social relations the two races should be forever separate and that they should not have pleasure or recreation grounds to be used or enjoyed, together and in common."

The doctrine of cy press can not be applied to establish a trust for an entirely different purpose from that intended by the testator. *Ford v. Thomas*, 111 Ga. 493 (36 SE 841). In the opinion of this court remanding the case to Bibb Superior Court it was held that the sole purpose for which the trust was created had become impossible of accomplishment and the trust had terminated. This was, in effect, a determination that the doctrine of cy pres could not be applied to Senator Bacon's will so as to authorize the operation of the park for the benefit of the public generally. The intervenors sought no review of this ruling by the Supreme Court of the United States, and it has become the law of the case. The ruling now under review that the doctrine of cy pres can not be applied is consistent with the opinion of this court in *Evans v. Newton*, 221 Ga. 870, supra.

2. It is contended by the intervenors that Baconsfield was

created under the provisions of *Code* § 69-504, authorizing any person to convey, devise, give, or grant to any municipal corporation of this State, in fee simple or in trust, lands for park or pleasure grounds, limited to the use of one race only, or women and children of one race only, and that this Code section violates the equal protection clause of the Fourteenth Amendment of the United States Constitution. To hold that the trust provision of Senator Bacon's will was made pursuant to an unconstitutional Code section, would have the effect of making the trust impossible of performance (*Smith v. DuBose*, 78 Ga. 413, 434 (3 SE 309, 6 ASR 260)), and thus cause a reversion under *Code* § 108-106 (4).

3. It is contended by the intervenors that Senator Bacon's will should be construed to grant all reversionary interest in Baconsfield to the City of Macon. This assertion is based on language in the will vesting all title and interest, "including all remainders and reversions," to the City of Macon in trust for the persons specified.

Senator Bacon devised a life estate in the trust property to his wife and two daughters, and the language pointed out by the intervenors appears in the following provision of the will: "When my wife, Virginia Lamar Bacon and my two daughters, Mary Louise Bacon Sparks and Augusta Lamar Bacon Curry, shall all have departed this life, and immediately upon the death of the last survivor of them, it is my will that all right, title and interest in and to said property hereinbefore described and bounded, both legal and equitable, including all remainders and reversions and every estate in the same of whatsoever kind, shall thereupon vest in and belong to the Mayor and Council of the City of Macon, and to their successors forever, in trust etc." This language concerned remainders and reversions prior to the vesting of the legal title in the City of Macon, as trustee, and not to remainders and reversions occurring because of a failure of the trust, which Senator Bacon apparently did not contemplate, and for which he made no provision. The reversion to the heirs at law is not under the terms of his will but occurs because of the provision of our law that where an express trust fails from any cause, a resulting

trust is implied for the benefit of the grantor, or testator, or his heirs. *Code* § 108-106 (4).

4. It is asserted that the City of Macon acquired all of the interest in Baconsfield of the heirs and trustees of Senator Bacon by a deed dated February 4, 1920, and that the heirs and trustees are now estopped from asserting an interest in Baconsfield. This position is not tenable. The City of Macon does not assert that it has fee simple title to Baconsfield. Senator Bacon in Item 9 of his will designated certain property of his estate to form the park to be known as Baconsfield. This property was placed in trust in the hands of named trustees, first for the benefit of his wife and two daughters, and after their death, for recreational uses of white women and children. The testator expressly denied the trustees any right to sell the trust property. The deed of the trustees dated February 4, 1920, was made in consideration of $1,665 annually during the life of the remaining daughter of Senator Bacon and the expenditure of $650 annually by the city for the improvement of the park, and its purpose was to allow the city to develop the property as a recreational area prior to the death of the remaining life tenant. It did not purport to convey any reversionary interest of heirs of Senator Bacon in the event the recreational park trust should terminate.

5. It is contended that, in obedience to the mandate of the United States Supreme Court, the City of Macon should be ordered re-instated as trustee of Baconsfield and directed to operate the park on a nonsegregated basis. The opinion of the Supreme Court of the United States held that the park could not be operated for the public on a segregated basis and generally reversed the judgment of this court affirming the judgment accepting the resignation of the City of Macon as trustee and appointing new trustees. The United States Supreme Court did not decide the question of whether the trust would terminate because of the inability of the trustees to effectuate the testator's purpose in creating the trust. With the termination of the trust, there is no question as to the right of the City of Macon to resign as trustee, since there can be no trustee without a trust to administer. Neither can there be an estoppel against the acceptance of the city's resignation as a trustee,

where the trust has terminated, because of the expenditure of public money in the development of the park. Compare *Bennett v. Davis,* 201 Ga. 58 (39 SE2d 3).

6. The intervenors urge that they have been denied designated constitutional rights by the judgment of the Superior Court of Bibb County holding that the trust has failed and the property has reverted to Senator Bacon's estate by operation of law. We recognize the rule announced in Shelley v. Kraemer, 334 U. S. 1 (68 SC 836, 92 LE 1161, 3 ALR2d 441), that it is a violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution for a state court to enforce a private agreement to exclude persons of a designated race or color from the use or occupancy of real estate for residential purposes. That case has no application to the facts of the present case.

Senator Bacon by his will selected a group of people, the white women and children of the City of Macon, to be the objects of his bounty in providing them with a recreational area. The intervenors were never objects of his bounty, and they never acquired any rights in the recreational area. They have not been deprived of their right to inherit, because they were given no inheritance.

The action of the trial court in declaring that the trust has failed, and that, under the laws of Georgia, the property has reverted to Senator Bacon's heirs, is not action by a state court enforcing racially discriminatory provisions. The original action by the Board of Managers of Baconsfield seeking to have the trust executed in accordance with the purpose of the testator has been defeated. It then was incumbent on the trial court to determine what disposition should be made of the property. The court correctly held that the property reverted to the heirs at law of Senator Bacon.

*Judgment affirmed. All the Justices concur.*